STATE OF CONNECTICUT *v.* CHESTER BROWN

ALCORN, C. J., HOUSE, COTTER, RYAN and SHAPIRO, Js.

Argued December 1, 1970—decided January 26, 1971

*Igor I. Sikorsky, Jr.,* special public defender, for the appellant (defendant).

*Arlen D. Nickowitz,* assistant state's attorney, with whom, on the brief, was *Joseph T. Gormley, Jr.,* state's attorney, for the appellee (state).

HOUSE, J. On September 29, 1961, the defendant was tried by a jury in the Superior Court in Fairfield County on the charge of rape. He did not testify and the court charged the jury in accordance with the then common practice and existing law that once the state had presented a prima facie case the failure of the defendant to testify becomes a fact which the jury are entitled to consider. See *State* v. *Nelson,* 139 Conn. 124, 127, 90 A.2d 157. The defendant took no exception to the charge, was found guilty and sentenced. Thereafter followed a number of habeas corpus petitions and an appeal. One of the issues raised in habeas corpus proceedings concerned an alleged denial of the defendant's opportunity to appeal. On June 10, 1965, a judge of the Superior Court in the course of denying a habeas corpus petition filed by the defendant added language purportedly granting him a right to appeal from his conviction. An appeal was thereafter taken and in

*State* v. *Brown,* 157 Conn. 398, 254 A.2d 570, this court dismissed the appeal on the ground that because the trial court had dismissed the habeas corpus petition it lacked authority to grant a late appeal. The dismissal was without prejudice to the defendant's right by habeas corpus proceedings to seek a determination of the merits of his claim that he had been improperly denied a right of appeal. Another habeas corpus petition was brought by the defendant and the Superior Court then found that the defendant had been denied his constitutional right of appeal from his 1961 conviction. The court granted the defendant the right to appeal from his conviction although it purported to limit the exercise of this right to consideration only of appealable issues which might have existed if the appeal had been taken in regular course following the conviction. The present appeal from the 1961 conviction was then taken and an assignment of errors filed on December 2, 1969. The only assignment of error is that the court in charging the jury in 1961 made reference to the failure of the defendant to testify.

Between the 1961 trial and the 1969 appeal the United States Supreme Court on April 28, 1965, decided the case of *Griffin* v. *California,* 380 U.S. 609, 85 S. Ct. 1229, 14 L. Ed. 2d 106. This case overruled the earlier law enunciated in 1908 in *Twining* v. *New Jersey,* 211 U.S. 78, 29 S. Ct. 14, 53 L. Ed. 97, and established the rule that it is reversible error for a court to charge a jury that it may take into consideration the failure of an accused to testify. The *Griffin* case did not decide whether the new rule applied only prospectively or had retroactive effect. Thereafter, on December 13, 1965, the United States Supreme Court in a per curiam decision remanded to the Supreme Court of Ohio the case of *O'Connor* v.

*Ohio,* 382 U.S. 286, 86 S. Ct. 445, 15 L. Ed. 2d 337, "for further proceedings in light of *Griffin* v. *California,* 380 U.S. 609 [, 85 S. Ct. 1229, 14 L. Ed. 2d 106]." The *O'Connor* case involved the constitutionality of a nontestifying-defendant comment. Thereafter, on January 19, 1966, the United States Supreme Court decided the case of *Tehan* v. *Shott,* 382 U.S. 406, 86 S. Ct. 459, 15 L. Ed. 2d 453. Citing *Linkletter* v. *Walker,* 381 U.S. 618, 85 S. Ct. 1731, 14 L. Ed. 2d 601, the court said (p. 419) : "We have considered the purposes of the *Griffin* rule, the reliance placed upon the *Twining* doctrine, and the effect upon the administration of justice of a retrospective application of *Griffin.* After full consideration of all the factors, we are not able to say that the *Griffin* rule requires retrospective application." A footnote to the *Tehan* decision (p. 409) expressly disclaimed any intention on the part of the court to decide whether the *Griffin* rule was applicable to cases pending on review at the time that case was decided. The opinion (p. 409) noted that "the original Ohio judgment of conviction in this case became final long before *Griffin* v. *California* was decided by this Court", and then subjoined the following footnote: "Nor is there any question of the applicability of the *Griffin* rule to cases still pending on direct review at the time it was announced. Cf. *O'Connor* v. *Ohio,* . . . [382 U.S. 286, 86 S. Ct. 445, 15 L. Ed. 2d 337]. The precise question is whether the rule of *Griffin* v. *California* is to be applied to cases in which the judgment of conviction was rendered, the availability of appeal exhausted, and the time for certiorari finally denied, all before April 28, 1965."

Subsequently, on November 14, 1966, the United States Supreme Court considered the second appeal in *O'Connor* v. *Ohio,* 385 U.S. 92, 87 S. Ct. 252, 17

L. Ed. 2d 189. In reversing the judgment of the Supreme Court of Ohio the court stated: "The State does not contest the fact that the prosecutor's remarks violated the constitutional rule announced in *Griffin*. Moreover, it is clear that the prospective application of that rule, announced in *Tehan* v. *Shott*, 382 U.S. 406 [, 86 S. Ct. 459, 15 L. Ed. 2d 453], does not prevent petitioner from relying on *Griffin*, since his conviction was not final when the decision in *Griffin* was rendered. Indeed, in *Tehan* we cited our remand of petitioner's case as evidence that *Griffin* applied to all convictions which had not become final on the date of the *Griffin* judgment. 382 U.S. at 409 n. 3."

In the light of the *Tehan* footnote and the language in the second *O'Connor* decision we followed the rule laid down in *Griffin* and found reversible error in the cases of *State* v. *Annunziato,* 154 Conn. 41, 221 A.2d 57, *State* v. *Vars,* 154 Conn. 255, 224 A.2d 744, and *State* v. *Wilkas,* 154 Conn. 407, 225 A.2d 821. In all of these cases the usual pre-*Griffin* charge had been given and in each instance an appeal was pending at the time the *Griffin* case was decided. The appellant in the present appeal relies on the *Griffin* rule as applied in these cases and the claim that, since at the time the *Griffin* case was decided his conviction was not "final" as that term was used in the second *O'Connor* case, his conviction should be reversed. Under the circumstances in which the defendant's late appeal was granted it is clear that although his trial had been completed in 1961 before the *Griffin* decision was released, nevertheless, because of the appeal permitted in 1969, as a result of the habeas corpus proceedings, his conviction was not "final." Nor could the trial court properly limit the grounds on which the appeal might be predi-

cated.  *Fredericks* v. *Reincke,* 152 Conn. 501, 508, 208 A.2d 756.

*Tehan* and the second *O'Connor* case were two of the earliest of a great many recent decisions by the United States Supreme Court concerning the principles of retroactivity in criminal cases.  We have analyzed the decisions of the United States Supreme Court since those two cases were decided in 1966, and have found no later cases which have held that the fact that a case was still on direct appeal was of the slightest significance.

Several cases have held that newly enunciated constitutional principles are fully retroactive in their application.  These include the following:  *Berger* v. *California,* 393 U.S. 314, 89 S. Ct. 540, 21 L. Ed. 2d 508, applying to the rule in *Barber* v. *Page,* 390 U.S. 719, 88 S. Ct. 1318, 20 L. Ed. 2d 255, concerning the state's efforts to find witnesses for the defense; *Roberts* v. *Russell,* 392 U.S. 293, 88 S. Ct. 1921, 20 L. Ed. 2d 1100, applying to the rule in *Bruton* v. *United States,* 391 U.S. 123, 88 S. Ct. 1620, 20 L. Ed. 2d 476, concerning the confession of a codefendant; *Price* v. *Georgia,* 398 U.S. 323, 90 S. Ct. 1757, 26 L. Ed. 2d 300, applying to *Benton* v. *Maryland,* 395 U.S. 784, 89 S. Ct. 2056, 23 L. Ed. 2d 707, concerning double jeopardy.

Another line of cases has held that the new principle applied only to those cases in which the proscribed act took place after the date of the decision enunciating the new rule.  These include *Stovall* v. *Denno,* 388 U.S. 293, 87 S. Ct. 1967, 18 L. Ed. 2d 1199, and *Foster* v. *California,* 394 U.S. 440, 89 S. Ct. 1127, 22 L. Ed. 2d 402, applying the *United States* v. *Wade* rule, in 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149, in regard to the presence of counsel at police lineups; *DeStefano* v. *Woods,* 392 U.S. 631,

88 S. Ct. 2093, 20 L. Ed. 2d 1308, applying to *Duncan* v. *Louisiana,* 391 U.S. 145, 88 S. Ct. 1444, 20 L. Ed. 2d 491, and *Bloom* v. *Illinois,* 391 U.S. 194, 88 S. Ct. 1477, 20 L. Ed. 2d 522, referring to the right to a jury trial in misdemeanor *(Duncan)* and contempt *(Bloom)* cases; *Halliday* v. *United States,* 394 U.S. 831, 89 S. Ct. 1498, 23 L. Ed. 2d 16, applying to *McCarthy* v. *United States,* 394 U.S. 459, 89 S. Ct. 1166, 22 L. Ed. 2d 418, concerning the voluntariness of guilty pleas; and *Desist* v. *United States,* 394 U.S. 244, 89 S. Ct. 1030, 22 L. Ed. 2d 248, applying to *Katz* v. *United States,* 389 U.S. 347, 88 S. Ct. 507, 19 L. Ed. 2d 576, concerning eavesdropping. Even two earlier decisions of major significance, *Escobedo* v. *Illinois,* 378 U.S. 478, 84 S. Ct. 1758, 12 L. Ed. 2d 977, and *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, were held to apply only to trials starting after the dates of those decisions. *Johnson* v. *New Jersey,* 384 U.S. 719, 86 S. Ct. 1772, 16 L. Ed. 2d 882.

This apparent abandonment by the United States Supreme Court of the *O'Connor* "final conviction" line of demarcation in favor of full retroactivity or prospective operation only is confirmed by the express language of two cases decided since that decision. In *Stovall* v. *Denno,* supra, decided on June 12, 1967, the United States Supreme Court held that the principles set out in *United States* v. *Wade,* supra, and *Gilbert* v. *California,* 388 U.S. 263, 87 S. Ct. 1951, 18 L. Ed. 2d 1178, regarding cases involving confrontations for identification purposes conducted in the absence of counsel should have application only to confrontations occurring after the date on which the *Stovall* case was decided. The opinion contains the following pertinent language (p. 300): "In *Tehan* v. *Shott,* . . . we thought it persuasive

against retroactive application of the no-comment rule of *Griffin* v. *California,* 380 U.S. 609, that such application would have a very serious impact on the six states that allowed comment on an accused's failure to take the stand. We said, 'To require all of those States now to void the conviction of every person who did not testify at his trial would have an impact upon the administration of their criminal law so devastating as to need no elaboration.' 382 U.S. at 419. That impact is insignificant compared to the impact to be expected from retroactivity of the *Wade* and *Gilbert* rules. . . . We conclude, therefore, that the *Wade* and *Gilbert* rules should not be made retroactive. We also conclude that, for these purposes, no distinction is justified between convictions now final, as in the instant case, and convictions at various stages of trial and direct review. We regard the factors of reliance and burden on the administration of justice as entitled to such over-riding significance as to make that distinction unsupportable. . . . Inequity arguably results from according the benefit of a new rule to the parties in the case in which it is announced but not to other litigants similarly situated in the trial or appellate process who have raised the same issue. But we regard the fact that the parties involved are chance beneficiaries as an insignificant cost for adherence to sound principles of decision-making."

This principle was subsequently expressly affirmed in *DeStefano* v. *Woods,* supra, decided on June 17, 1968. The per curiam opinion in that case held that the decisions in *Duncan* v. *Louisiana,* 391 U.S. 145, 88 S. Ct. 1444, 20 L. Ed. 2d 491, and *Bloom* v. *Illinois,* 391 U.S. 194, 88 S. Ct. 1477, 20 L. Ed. 2d 522, relating to the right to jury trial do not apply to cases where trials began prior to May 20, 1968, the date

of the United States Supreme Court decisions in the *Duncan* and *Bloom* cases. This statement of this rule in the opinion is subjoined by the following footnote (p. 635): "We see no basis for a distinction between convictions that have become final and cases at various stages of trial and appeal. See *Stovall* v. *Denno,* . . . [388 U.S. 293, 300–301, 87 S. Ct. 1967, 18 L. Ed. 2d 1199]."

We conclude that, although it does not appear that the second *O'Connor* case has been expressly overruled, nevertheless the United States Supreme Court would not follow that decision today in determining the applicability of the *Griffin* rule. Furthermore, application of the retroactivity tests prescribed by that court in *Stovall* v. *Denno,* 388 U.S. 293, 297, 87 S. Ct. 1967, 18 L. Ed. 2d 1199,[1] all result in persuasive arguments against the applicability of that rule to the present case.

We find language in an en banc decision of the Court of Appeals for the Fourth Circuit apt in the present situation. In *Rowe* v. *Peyton,* 383 F.2d 709, 714, affirmed in *Peyton* v. *Rowe,* 391 U.S. 54, 88 S. Ct. 1549, 20 L. Ed. 2d 426, that court said, speaking by Haynsworth, C. J.: "This court, of course, must follow the Supreme Court, but there are occasional situations in which subsequent Supreme Court opinions have so eroded an older case, without explicitly overruling it, as to warrant a subordinate court in pursuing what it conceives to be a clearly defined new lead from the Supreme Court to a conclusion inconsistent with an older Supreme Court case."

---

[1] "The criteria guiding resolution of the question implicate (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards."

We conclude that the *Griffin* rule does not govern disposition of the present appeal.

There is no error.

In this opinion RYAN and SHAPIRO, Js., concurred.

ALCORN, C. J. (concurring). I concur in the result reached by the court because I do not believe that the *Griffin* rule was intended to apply, or does apply, to a state of facts such as those in the present case under the holding and language of the two *O'Connor* cases and *Tehan* v. *Shott*. In the second *O'Connor* case, 385 U.S. 92, 93, 87 S. Ct. 252, 17 L. Ed. 2d 189, the court applied the *Griffin* rule to cases in which the "conviction was not final when the decision in *Griffin* was rendered." Footnote three in *Tehan* v. *Shott,* 382 U.S. 406, 409, 86 S. Ct. 459, 15 L. Ed. 2d 453, applied the *Griffin* rule "to cases still pending on direct review at the time it was announced" or, in other words, not "to cases in which the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition for certiorari elapsed or a petition for certiorari finally denied, all before April 28, 1965." When *Griffin* was decided, a petition for certiorari was before the United States Supreme Court in the first *O'Connor* case. It was in that context that the retroactivity of *Griffin* was determined. I do not believe that the United States Supreme Court had in contemplation a case such as the present one in which an unexercised right of appeal was revitalized in an independent proceeding eight years after the judgment had apparently become final.

COTTER, J. (dissenting). This case is on direct appeal to this court and a final judgment has not yet been rendered. I cannot, therefore, agree with the majority.

The sole question presented in this appeal is whether this defendant is entitled to the benefit of the rule of substantive law involving a federal constitutional right established in *Griffin* v. *California,* 380 U.S. 609, 85 S. Ct. 1229, 14 L. Ed. 2d 106. In resolving this issue the controlling decisions are *O'Connor* v. *Ohio,* 385 U.S. 92, 93, 87 S. Ct. 252, 17 L. Ed. 2d 189, and *Tehan* v. *Shott,* 382 U.S. 406, 86 S. Ct. 459, 15 L. Ed. 2d 453. In *Tehan,* at page 409, footnote 3, the court held that *Griffin* should be applied to cases pending on direct appeal at the time the decision in *Griffin* was announced. This appeal falls squarely within that decision. Mr. Justice Stewart, speaking for the court in *Tehan,* stated: "Nor is there any question of the applicability of the *Griffin* rule to cases still pending on direct review at the time it was announced. Cf. *O'Connor* v. *Ohio,* ante, p. 286." The reference was made to the first *O'Connor* case, i.e., 382 U.S. 286, 86 S. Ct. 445, 15 L. Ed. 2d 337. In that case the question at issue had not been raised at any time in the Ohio courts and was not raised until a motion for rehearing of a petition for a writ of certiorari was made in the United States Supreme Court. The Supreme Court of the United States, however, on a rehearing, granted certiorari, vacated the judgment and remanded the case to the Supreme Court of Ohio. Thereafter, the United States Supreme Court in the second *O'Connor* case in reversing the Supreme Court of Ohio, held that the petitioner was not precluded from relying on *Griffin,* "since his conviction was not final when the decision in *Griffin* was rendered"; that *"Griffin* applied to all convictions which had not become final on the date of the *Griffin* judgment"; that the petitioner was not barred from asserting "this federal right"; and that the peti-

tioner "was seeking direct review here when *Griffin* was handed down." *O'Connor* v. *Ohio,* 385 U.S. 92, 93, 87 S. Ct. 252, 17 L. Ed. 2d 189.

In a recent case, similar on its facts to this case now under consideration on this appeal, which the Connecticut Supreme Court stated was indistinguishable from the second *O'Connor* case, the court decided that it was impelled to conclude that the appellant was not barred from asserting, on appeal, his federal constitutional right against self-incrimination. *State* v. *Vars,* 154 Conn. 255, 271, 272, 224 A.2d 744. We followed the statement contained in footnote 3 of the *Tehan* case, page 409, and Chief Justice King, writing the opinion, stated that there was no question that the *Griffin* rule must be applied to cases pending on "direct review at the time it was announced" and the court reversed a criminal conviction. *State* v. *Annunziato,* 154 Conn. 41, 44, 221 A.2d 57. The defendant is before this court on direct appeal, there has been no final judgment rendered and "where on habeas corpus it has been properly determined that a right of appeal required by the federal constitution has been denied, any rule restricting an appeal merely because of a lapse of time necessarily is ineffective to preclude an appeal in accordance with federal constitutional requirements." *Fredericks* v. *Reincke,* 152 Conn. 501, 508, 208 A.2d 756.

The United States Supreme Court has not indicated an intention to abandon the limited application of retroactivity of this rule of criminal procedure of constitutional dimension enunciated in *O'Connor* and followed by us in *Annunziato* and *Vars.* In a number of cases noted in the majority opinion decided after the decision in *O'Connor* it has continued to apply the principle of full retroactivity.

See cases such as *Roberts* v. *Russell,* 392 U.S. 293, 88 S. Ct. 1921, 20 L. Ed. 2d 1100, stating (p. 295) that "the constitutional error presents a serious risk that the issue of guilt or innocence may not have been reliably determined" (the case before us likewise involves a question of credibility); *Berger* v. *California,* 393 U.S. 314, 89 S. Ct. 540, 21 L. Ed. 2d 508, in which it was stated (p. 315) that the inability to cross-examine at trial a witness absent from the jurisdiction may have had a significant effect on the "integrity of the fact finding process" and held that the case of *Barber* v. *Page,* 390 U.S. 719, 88 S. Ct. 1318, 20 L. Ed. 2d 255, must be given full retroactive application; and *Price* v. *Georgia,* 398 U.S. 323, 90 S. Ct. 1757, 26 L. Ed. 2d 300.

A review of the cases reversing prior doctrine in the area of the criminal law discloses the United States Supreme Court's concern with the impact a reversal of prior doctrine might have on law enforcement and on the administration of justice and how these considerations affect the determination of retroactivity. See cases such as *DeStefano* v. *Woods,* 392 U.S. 631, 633, 88 S. Ct. 2093, 20 L. Ed. 2d 1308, and *Stovall* v. *Denno,* 388 U.S. 293, 297, 87 S. Ct. 1967, 18 L. Ed. 2d 1199. If "a very great number of cases" would be affected; if "all convictions for serious crimes . . . would be in jeopardy"; and if "the adverse effects on the administration of justice would likely be substantial," the Supreme Court of the United States would limit the new doctrine to prospective application. *DeStefano,* supra, 634, 635. The doctrine of *O'Connor* does not fall into such an extreme category. It is precise and clear and since its advent in 1966 there have only been four cases, *Vars, Annunziato,* and *Wilkas* (which cases we now overrule) and the present appeal arising out of that

decision. In fact, in discussing the rule of *O'Connor,* the United States Supreme Court said, "[t]hat impact is insignificant," in comparison with other new constitutional doctrines announced in decisions of the United States Supreme Court. *Stovall,* supra, 300.

In the present case, the accused was indigent; he was represented by the public defender in 1961 at his trial, who notified him that he would not represent him in an appeal, although he informed the trial court the defendant intended to file an appeal; and he notified, in 1961, the clerk of the Superior Court of his intention to appeal. The trial court specifically found that the petitioner–accused was effectively frustrated in his efforts to take an appeal, did not understandingly and knowingly forego a direct appeal and did not deliberately bypass the orderly procedure of an appeal. *Fay* v. *Noia,* 372 U.S. 391, 439, 440, 83 S. Ct. 822, 9 L. Ed. 2d 837. Presumably, the Connecticut trial courts have been following the doctrine of *O'Connor* since its announcement and the tenuous fact of the filing in court of a substantial number of similar cases having an adverse effect on the administration of justice appears remote. The considerations enunciated by the United States Supreme Court are absent herein so that it is reasonable to suppose that the chance that the court will reverse *O'Connor* seems unlikely. I see no justification for a different reading of *O'Connor* v. *Ohio,* 385 U.S. 92, 87 S. Ct. 252, 17 L. Ed. 2d 189, than that contained in the original opinion. One can make no prophecy on the demise of *O'Connor* until it is set aside by the United States Supreme Court.

I would find error, set the judgment aside and order a new trial.