IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

**STATE OF ARIZONA**,
*Appellee*,

*v.*

**PHILIP JOHN MARTIN**,
*Appellant*.

No. CR-18-0380-PR
Filed August 9, 2019

Appeal from the Superior Court in Mohave County
The Honorable Billy K. Sipe, Jr., Judge *Pro Tempore*
No. CR201201326
**VACATED AND REMANDED**

Opinion of the Court of Appeals, Division One
245 Ariz. 42 (App. 2018)
**VACATED**

COUNSEL:

Mark Brnovich, Arizona Attorney General, O.H. Skinner, Solicitor General, Joseph T. Maziarz, Chief Counsel, Criminal Appeals Section, Linley Wilson (argued), Assistant Attorney General, Phoenix, Attorneys for State of Arizona

Aaron M. Demke, Mohave County Legal Advocate Attorney, Jill L. Evans (argued), Deputy Legal Advocate Attorney, Kingman, Attorneys for Philip John Martin

———————

JUSTICE BOLICK authored the opinion of the Court, in which VICE CHIEF JUSTICE BRUTINEL, and JUSTICES TIMMER, GOULD, LOPEZ, BALES (RETIRED), and PELANDER (RETIRED) joined. JUSTICE GOULD filed a concurring opinion.

———————

JUSTICE BOLICK, opinion of the Court:

¶1 Philip John Martin was tried for first-degree murder in 2013, but the jury marked the verdict form "[u]nable to agree" on that charge and instead found him guilty of the lesser-included offense of second-degree murder. After successfully appealing that conviction, Martin was retried and convicted of first-degree murder. We hold that double jeopardy barred Martin's retrial for first-degree murder because the State had a full and fair opportunity to try him on that charge in the first trial and the jury, after full deliberation, refused to convict.

## BACKGROUND

¶2 Martin shot and killed his neighbor with a single shotgun blast as the neighbor approached Martin's house to speak with him. Martin admitted that he shot his neighbor, contending he believed the victim was armed and coming to harm him after the victim ignored his demands to leave. The State charged Martin with premeditated first-degree murder under A.R.S. § 13-1105(A)(1).

¶3 At Martin's first trial for first-degree murder, the trial court provided the jury with a standard instruction on the lesser-included offense

2

of second-degree murder. *See State v. LeBlanc*, 186 Ariz. 437 (1996). The court advised:

> You may find the defendant guilty of the less serious crime if all of you agree that the state has failed to prove the defendant guilty of the more serious crime beyond a reasonable doubt, or if after reasonable efforts you are unable to agree unanimously on the more serious crime, and you do all agree that the state has proven the defendant guilty of the less serious crime.

The jury returned the verdict form with the box marked "[u]nable to agree" on the first-degree murder charge but found Martin guilty of second-degree murder. He was sentenced to sixteen years in prison.

¶4 Martin appealed on procedural grounds, and the court of appeals reversed the conviction and remanded for a new trial. *State v. Martin*, No. 1 CA-CR 13-0839, 2014 WL 7277831, at *5 ¶ 19 (Ariz. App. Dec. 23, 2014) (mem. decision).

¶5 Before the second trial, the trial court granted the State's motion to retry Martin for first-degree murder, over Martin's objection that doing so would violate double jeopardy. The court ruled that no "implied acquittal" occurred in the first trial, that the jury was genuinely deadlocked, and that the State demonstrated a "manifest necessity" for continuing Martin's jeopardy for first-degree murder. Therefore, jeopardy did not terminate on the first-degree murder charge. The court expressed its misgivings over the ruling, however, observing that the State had the opportunity to convict Martin of first-degree murder and failed, that the State could not have retried Martin for first-degree murder had he not appealed the second-degree murder conviction, and that by doing so Martin essentially forfeited his sixteen-year sentence and was now exposed to a life sentence by having exercised his appellate rights.

¶6 In the subsequent retrial, the jury found Martin guilty of first-degree murder and the court sentenced him to natural life in prison. The court of appeals affirmed Martin's conviction and sentence. *State v. Martin*, 245 Ariz. 42, 46 ¶ 18 (App. 2018).

¶7        We granted review because whether double jeopardy prevents a retrial on the greater offense in these circumstances presents a recurring question of statewide importance.  We have jurisdiction under article 6, section 5(3) of the Arizona Constitution.  Whether double jeopardy bars retrial is a question of law that this Court reviews de novo.  *State v. Moody*, 208 Ariz. 424, 437 ¶ 18 (2004).

## DISCUSSION

¶8        "The constitutional prohibition against 'double jeopardy' was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense."  *Green v. United States*, 355 U.S. 184, 187 (1957); *see* U.S. Const. amend. V ("No person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb . . . .").  The protection embraces a defendant's "valued right to have his trial completed by a particular tribunal" wherever possible to prevent prolonged or repeated proceedings.  *Arizona v. Washington*, 434 U.S. 497, 503–04 (1978) (internal quotation marks omitted).  The "general rule" is that the prosecution is entitled to only one complete opportunity to prove the case, but retrial on the same charge may be permissible if the "proceeding is terminated without finally resolving the merits of the charges against the accused."  *Id.* at 505.

¶9        Martin primarily relies on *Green v. United States* to argue that the first trial fully resolved his guilt on the first-degree murder charge such that the State could only retry him for second-degree murder at his subsequent trial.  In *Green*, the United States Supreme Court barred retrial on a first-degree murder charge after the first jury was silent on that charge but returned a guilty verdict on the lesser-included offense of second-degree murder, and that conviction was overturned on appeal.  355 U.S. at 186, 198.  Martin contends that by checking "[u]nable to agree" on the verdict form here, the jury, as in *Green*, impliedly acquitted him on the first-degree murder charge, thus preventing retrial on that charge.

¶10        By contrast, the State cites *Richardson v. United States* for the proposition that "a retrial following a 'hung jury' does not violate the Double Jeopardy Clause."  468 U.S. 317, 324 (1984).  In *Richardson*, the Court permitted retrial on two narcotics charges when the jury was unable to reach verdicts and the trial court declared a mistrial on those counts because

"a trial court's declaration of a mistrial following a hung jury is not an event that terminates the original jeopardy." *Id.* at 318–19, 326. When the jury in Martin's first trial indicated it was unable to agree on the first-degree murder charge, the State argues, it reflected a hung jury, thus entitling the State to retry that offense.

¶11        We agree with Martin that *Green* guides the analysis here. The Court observed that it is not "essential that a verdict of guilt or innocence be returned for a defendant to have once been placed in jeopardy so as to bar a second trial on the same charge." *Green*, 355 U.S. at 188. Granted, the jury in *Green* was silent on the first-degree murder charge; whereas here it specified that it was "[u]nable to agree." But in *Green*, as here, there were no unforeseeable circumstances, such as mistrial, that made completion of the first trial impossible. *Id.* Rather, the jury considered both the greater and lesser offense and "refused to find [the defendant] guilty" of the greater charge. *Id.* at 190.

¶12        The Court in *Green* observed that in such circumstances, "the great majority of cases in this country have regarded the jury's verdict as an implicit acquittal on the charge of first degree murder," but the Court concluded that a finding that jeopardy for first-degree murder terminated upon conviction of the lesser-included offense "need not rest alone" on the implied-acquittal assumption. *Id.* at 190–91. Rather, jeopardy ended when the jury "was given a full opportunity to return a verdict and no extraordinary circumstances appeared which prevented it from doing so." *Id.* at 191. Thus, the defendant's jeopardy for first-degree murder "came to an end when the jury was discharged [after entering a verdict] so that he could not be retried for that offense." *Id.* The rule of *Green* is that where the state had a full and fair opportunity to try the defendant on a charge and the jury refused to convict, jeopardy terminates when the jury is dismissed following its verdict, and therefore the state may not place the defendant in jeopardy again for that same charge.

¶13        The Court expressly reaffirmed *Green*'s holding in *Price v. Georgia*, 398 U.S. 323, 329 (1970). The Court acknowledged the "concept of continuing jeopardy that has application where criminal proceedings against an accused have not run their full course." *Id.* at 326. In *Price*, the defendant was indicted for murder, and while remaining silent as to the charge of murder, the jury returned a guilty verdict on the lesser-included

crime of voluntary manslaughter. *Id.* at 324. As here, the defendant appealed based on procedural grounds and the conviction was overturned. *Id.* He was retried for murder and again found guilty of voluntary manslaughter. *Id.* While the Court held that double jeopardy did not bar retrial on the lesser offense as the defendant had successfully appealed the conviction, it stated that "the first verdict, limited as it was to the lesser included offense, required that the retrial be limited to that lesser offense." *Id.* at 327.

¶14      The Court further clarified the applicable principles in *Arizona v. Washington*. In that case, the trial judge declared a mistrial because of defense counsel's improper remarks during opening statements. 434 U.S. at 498. The Court rejected the defendant's argument that another trial would be barred by double jeopardy. *Id.* at 515–16. The Court noted the "general rule" that "the prosecutor is entitled to one, and only one, opportunity to require an accused to stand trial." *Id.* at 505. That rule is grounded in the defendant's right to have the trial completed by a particular tribunal and can apply "[e]ven if the first trial is not completed." *Id.* at 503. However, "retrial is not automatically barred when a criminal proceeding is terminated without finally resolving the merits of the charges against the accused." *Id.* at 505. Specifically, a prosecutor may seek a mistrial over a defendant's objection if a "manifest necessity" exists to do so, which the Court characterized as a "heavy" burden. *Id.* The Court concluded that defense counsel's inappropriate comments could have led to a jury "tainted by bias," which satisfied the prosecutor's burden and justified retrial following the mistrial. *Id.* at 516.

¶15      The Court also observed that the general rule of a single opportunity to prosecute a charge does not apply where a trial court declares a mistrial based on a finding of "a genuinely deadlocked jury." *Id.* at 509. In that circumstance, the court may "require the defendant to submit to a second trial" because of "society's interest in giving the prosecution one complete opportunity to convict those who have violated its laws." *Id.*; *cf. Richardson*, 468 U.S. at 323–24 (emphasizing that "failure of the jury to agree on a verdict" constitutes a "manifest necessity" justifying a mistrial).

¶16      The State here insists it did not have a full and complete opportunity to convict Martin of first-degree murder in the first trial because the jury indicated it was unable to agree to a verdict on that charge.

The State correctly notes that "[u]nable to agree" does not equate to an implicit acquittal. *Cf. Richardson*, 468 U.S. at 325 (holding a hung jury is not the equivalent of acquittal). But as *Green* emphasizes, an implied acquittal is sufficient but not necessary for jeopardy to terminate. 355 U.S. at 190–91. Rather, the general rule is that where the state had a complete opportunity to prosecute the defendant and failed to obtain a conviction on the greater charge, retrial on that charge is barred. *Id.* at 191; *see also Washington*, 434 U.S. at 505. That is exactly what happened in this case as the State fully prosecuted the first-degree murder charge but was unable to persuade the jury to convict. *See Green*, 355 U.S. at 190 (noting that jeopardy terminates where the jury "refused to find [the defendant] guilty" on the greater charge and that charge was "in no way involved in his appeal"). Such a situation, where the jury is unable to agree on one charge and convicts on the lesser offense, cannot alone justify a finding of "extraordinary circumstances" or "genuine deadlock" required to meet the state's heavy burden to continue jeopardy. *See Gusler v. Wilkinson*, 199 Ariz. 391, 394–95 ¶¶ 17–18 (2001) (requiring that the state demonstrate "manifest necessity" to overcome the defendant's right to have his fate decided by the impaneled jury).

¶17        The only exception applicable here would be if the State had demonstrated a "manifest necessity" to support the trial court declaring a mistrial and discharging the jury because it was deadlocked. *See Washington*, 434 U.S. at 509. The absence of that situation here distinguishes this case from *Richardson*, on which the State relies, where the prosecutor successfully sought a mistrial based on a hung jury. 468 U.S. at 326 ("[A] trial court's declaration of a mistrial following a hung jury is not an event that terminates the original jeopardy to which petitioner was subjected."); *see also Sattazahn v. Pennsylvania*, 537 U.S. 101, 114 (2003) (permitting second capital-sentencing proceeding after defendant moved to discharge deadlocked jury). Here the jury was not discharged because of a mistrial based on jury deadlock, but only after it had returned a complete verdict on the original indictment. *See Brazzel v. Washington*, 491 F.3d 976, 984 (9th Cir. 2007) ("Genuine deadlock is fundamentally different from a situation in which jurors are instructed that if they 'cannot agree,' they may compromise by convicting of a lesser alternative crime . . . ."); *State v. Espinoza*, 233 Ariz. 176, 179 ¶ 10 (App. 2013) ("[A] jury's mere statement that it has been unable to reach a verdict after persistent deliberations—and after proceeding to consider a lesser offense in the context of a *LeBlanc*

instruction—does not, without further inquiry by the court, demonstrate a true deadlock." (footnote omitted)).

¶18　　　　The process for fully and completely prosecuting a criminal case in Arizona is set forth in *LeBlanc*, which established a unitary process for jury consideration of greater and lesser-included offenses. 186 Ariz. 437. Before *LeBlanc*, the approved instruction required jurors to first acquit the defendant on the charged offense before considering lesser-included offenses. *State v. Wussler*, 139 Ariz. 428, 430 (1984). *LeBlanc* changed the instruction to allow jurors to "render a verdict on a lesser-included offense if, after full and careful consideration of the evidence, they are unable to reach agreement with respect to the charged crime." 186 Ariz. at 438. Thus, the jury may render a verdict on the lesser-included offense if it either acquits the defendant on the greater offense or cannot agree on a verdict after reasonable efforts. *Id.*

¶19　　　　The Court reasoned that the "reasonable efforts" procedure "diminishes the likelihood of a hung jury, and the significant costs of retrial, by providing options that enable the fact finder to better gauge the fit between the state's proof and the offenses being considered." *Id.* at 438–39. In other words, following a full and complete presentation of the evidence, the jury will first consider the greater offense, and if it is not convinced the evidence supports a guilty verdict, it will consider the lesser-included offense. The process is calculated to avoid the deadlocked jury that is a necessary predicate for a mistrial and for a second trial on the greater offense. The Court emphasized that "because such an instruction would mandate that the jury give diligent consideration to the most serious crime first, the state's interest in a full and fair adjudication of the charged offense is adequately protected." *Id.* at 439. And, as a necessary corollary in applying *Green* and *Washington*, when a verdict is reached on a lesser-included offense in accord with the *LeBlanc* instruction, jeopardy terminates for the greater offense and the defendant may not be retried on the greater offense.

¶20　　　　The State concedes that the verdict here was reached in accord with the *LeBlanc* instruction. The jury was admonished to carefully consider whether the evidence supported conviction on the greater offense, and to consider the lesser-included offense only if it acquitted him on the greater charge or was unable to agree. Either way, the State had a full and

complete opportunity to prove its case for first-degree murder, and jeopardy terminated for that crime following the jury's guilty verdict for second-degree murder. *See Green*, 355 U.S. at 190 ("[The defendant] was in direct peril of being convicted and punished for first degree murder at his first trial. He was forced to run the gantlet once on that charge and the jury refused to convict him.").

¶21 We recognize that this unitary approach toward jury deliberation over greater and lesser-included offenses does not lend itself to a ready opportunity for the prosecution to seek a mistrial based on a deadlocked jury. *See Espinoza*, 233 Ariz. at 180 ¶ 12. However, the *LeBlanc* instruction is intended to expand jury options and thereby minimize the prospect of a hung jury. The State here did not ask us to reconsider *LeBlanc*, although we do not foreclose the possibility of doing so in a future case or rule petition.

¶22 Finally, the State argues that it was Martin who extended jeopardy by deciding to appeal his second-degree murder conviction. The State acknowledges that if Martin had not appealed his conviction for second-degree murder, double jeopardy would have prohibited a new trial on the first-degree murder charge, but it asserts that jeopardy continued once Martin appealed. The State is wrong. By appealing a conviction on a lesser-included offense, a defendant does not restart the jeopardy clock on a greater charge. *Green*, 355 U.S. at 193.

¶23 Indeed, the Supreme Court expressly rejected as "paradoxical" and "wholly fictional" the notion that a defendant essentially waives double jeopardy rights by appealing a conviction on a lesser charge. *Id.* at 191–93. The Court observed that "[t]he law should not, and . . . does not, place the defendant in such an incredible dilemma" that "he must be willing to barter his constitutional protection against a second prosecution for an offense punishable by death as the price of a successful appeal from an erroneous conviction of another offense." *Id.* at 193; *see also Price*, 398 U.S. at 327 (stating that where the first verdict was limited to the lesser-included offense and that verdict was overturned on appeal, the retrial must be limited to that offense). That dilemma is particularly pronounced where, as in Arizona, a defendant has a constitutional right to appeal. Ariz. Const. art. 2, § 24 ("In criminal prosecutions, the accused shall have . . . the right to appeal in all cases . . . .").

¶24        For the foregoing reasons, we conclude that trying Martin a second time for first-degree murder under the circumstances here violated his constitutional right to be free from double jeopardy.

## CONCLUSION

¶25        The State alternatively asks us to reinstate Martin's conviction for second-degree murder. Martin argues that retrying him for first-degree murder may have made it more likely for the jury to convict him of the lesser-included offense than if the jury had considered the second-degree murder charge alone. *See Price*, 398 U.S. at 331 (stating "we cannot determine whether or not the murder charge against petitioner induced the jury to find him guilty of the less serious offense"). We vacate the court of appeals decision and remand to the trial court to consider in the first instance whether to reduce Martin's conviction to the lesser-included offense, or, if Martin can show prejudice, to order a new trial. *See Morris v. Mathews*, 475 U.S. 237, 246 (1986) (describing *Price* as suggesting "that a new trial is required only when the defendant shows a reliable inference of prejudice").

GOULD, J., concurring.

¶26     I concur in the Court's opinion.  The Court faithfully applies the reasonable-efforts framework set out by *State v. LeBlanc*, 186 Ariz. 437 (1996), and correctly notes that "[t]he State here did not ask us to reconsider *LeBlanc*."  *Supra* ¶ 21.  In my view, however, its conclusion that double jeopardy attaches when a jury enters an "unable to agree" verdict raises serious concerns about *LeBlanc*.

¶27     *LeBlanc* never addressed the double jeopardy consequences of a jury reaching an "unable to agree" verdict.  Generally, when a jury is hung, double jeopardy does not attach.  *Richardson v. United States*, 468 U.S. 317, 324 (1984) (holding "a retrial following a 'hung jury' does not violate the Double Jeopardy Clause").  However, under *LeBlanc*, a verdict of "unable to agree" may, but does not *necessarily*, mean that the jurors are hung on the greater offense.  *See supra* ¶ 17.

¶28     Compounding this problem is the fact that *LeBlanc*'s approach "does not lend itself to a ready opportunity for the prosecution to seek a mistrial based on a deadlocked jury."  *See supra* ¶ 21.  As a practical matter, *LeBlanc* provides no opportunity for the state to seek a mistrial.  For example, in the typical case, if the jurors are truly hung on a charge, they can advise the judge that they are at an impasse.  However, because *LeBlanc* only requires the jurors to engage in "reasonable efforts" in considering the greater charge (rather than having to actually agree on a verdict of guilty or not guilty), it seems unlikely that they would advise the judge that they are at an impasse—particularly when they can simply state they are "unable to agree" and move on to the lesser charge.

¶29     Requesting the judge to poll the jury is also not a viable option.  When the *LeBlanc* verdict form is returned to the court, the jury has already reached a verdict on the lesser offense.  Under these circumstances, why would the prosecutor request the judge to poll the jury about their "unable to agree" verdict on the greater charge?  Worse yet, what if the jury responds they are not hung, and they request assistance from the court in breaking the impasse?  *See* Ariz. R. Crim. P. 22.4 & cmt. (stating the trial judge may assist a jury at an impasse by "giving additional instructions; clarifying earlier instructions; directing the attorneys to make additional closing argument; reopening the evidence for limited purposes; or a

combination of these measures"). Would the judge allow additional arguments or evidence, and then instruct the jurors to resume their deliberations on the greater charge? Obviously not. After all, given the fact that the jury has already reached a verdict on the lesser offense, any new deliberations on the greater offense are barred by double jeopardy. *Brown v. Ohio*, 432 U.S. 161, 168–69 (1977) (holding that double jeopardy bars a prosecution for a greater offense after a conviction for a lesser-included offense).

¶30        As the Court notes, jeopardy attaches if the "state had a full and fair opportunity to try the defendant on a charge and the jury refused to convict." *Supra* ¶ 12; *see Green v. United States*, 355 U.S. 184, 191 (1957). However, is this the case when the jury states it is "unable to agree"? With such an amorphous verdict, how can we conclude the state has indeed had a full and fair opportunity to try the defendant on the greater charge, or that the jury *refused* to convict on that charge? *See Arizona v. Washington*, 434 U.S. 497, 505 (1978) (holding that the state is entitled to one complete opportunity to prove the case, but double jeopardy does not bar retrial on the same charges if the "proceeding is terminated without finally resolving the merits of the charges against the accused").

¶31        Before *LeBlanc*, Arizona used the "acquittal-first" approach adopted in *State v. Wussler*, 139 Ariz. 428 (1984). Under that approach, the jury was required to acquit the defendant on the greater charge before considering the lesser charge. I understand *LeBlanc*'s concern with the "acquittal-first" approach, although in fairness, there are advantages and disadvantages to both the acquittal-first and reasonable-efforts approaches. *See LeBlanc*, 186 Ariz. at 439 (discussing the advantages of the reasonable-efforts approach over the acquittal-first approach); *id.* at 440–41 (Martone, J., concurring in the judgment) (compiling cases and discussing the advantages of the acquittal-first approach). Indeed, the debate about which approach is best (as well as other alternatives) existed before *LeBlanc* and persists to this day. *See United States v. Tsanas*, 572 F.2d 340, 344–46 (2d Cir. 1978) (compiling cases and discussing the advantages and disadvantages for both the government and defendant under the acquittal-first and reasonable-efforts approaches); *State v. Davis*, 266 S.W.3d 896, 904–08 (Tenn. 2008) (same); Michael K. Kaiser, Note, Blueford v. Arkansas: *Why the United States Supreme Court's Construction of Arkansas's Criminal Transitional Jury Instructions Is Not Binding on Arkansas Courts*, 66 Ark. L. Rev. 1083, 1096–

1101 (2013) (discussing the various approaches to lesser-included offense instructions and compiling cases regarding the same).

¶**32**    Although there is room for debate on this issue, in my view the primary weakness of *LeBlanc* is that it never addressed the problem we face today: the double jeopardy consequences of allowing a jury to proceed to a lesser charge based on a verdict of "unable to agree."  In contrast, despite its faults, the acquittal-first approach plainly and clearly resolves the double jeopardy issue.

¶**33**    The Court states that it does "not foreclose the possibility" of reexamining *LeBlanc*'s approach "in a future case or rule petition."  *Supra* ¶ 21.  For the reasons discussed above, I believe the Court's openness to this possibility is wise.