THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. BURTON C. GRAHAM, Appellant.

Third Department, December 20, 1973.

*James F. Young* for appellant.

*John F. O'Mara, District Attorney* (*D. Bruce Crew, III,* of counsel), for respondent.

COOKE, J. This is an appeal from a judgment of the Supreme Court, Chemung County, rendered May 26, 1972, upon a verdict convicting defendant of the crime of murder in the second degree.

Lucille Graham, the estranged wife of defendant, was found dead, floating face down in the bathtub of her home in Elmira, around 12:30 P.M. on August 26, 1961. Shortly thereafter, defendant was questioned by Detective Connelly and others at the Chemung County District Attorney's office. About an hour and a half later, he made a statement admitting that he had had an altercation with his wife as a result of his suggestion that she temporarily place their children in a foster home; that he had cut off her breath in an attempt to protect himself from her assault; and that when her struggling ceased, he placed her in the bathtub and turned on the cold water. He stated that he "didn't realize that she was unconscious enough but what she would be able to get out," and denied knowing that she was already dead or that she would drown. Following the statement, defendant was placed under arrest. He was arraigned that evening on a charge of murder in the second degree (section 1046 of the Penal Law of 1909) and was advised of his right to an attorney.

Six days later, on September 1, defendant was questioned at the county jail, in the absence of counsel, by Detective Connelly, the Assistant District Attorney and the chief deputy. He was asked if he had a lawyer, to which he replied in the negative; he was not advised that he was not required to answer any questions without consulting an attorney, and counsel was not assigned until September 12.

As a result of this questioning, defendant signed a sworn statement typed by Connelly which was substantially more damaging than his first statement. Therein defendant admitted fabricating certain items of "evidence"—notes from his deceased wife derogatory of her conduct and laudatory of his — and further admitted that he stilled his wife's screaming and struggling after she was put in the bathtub by placing his hand "over her mouth and nose for a couple of minutes," and that he left the room "knowing that she was dying or going to drown." Defendant was indicted for murder in the first degree.

At the trial, held in 1962, both statements and the notes were received in evidence. Defendant testified substantially along the lines of his first statement and was convicted of murder in the second degree. On appeal to this court, relying on the holding of *People* v. *Meyer* (11 N Y 2d 162) which was decided after the trial, we held that defendant's September 1 statement and the two fabricated notes were inadmissible, and that without this evidence a conviction of murder in either degree could not be sustained. We therefore modified the judgment pursuant to section 543 of the Code of Criminal Procedure so as to convict defendant of manslaughter in the first degree (*People* v. *Graham*, 20 A D 2d 949, 950, mot. for lv. to app. den. on July 22, 1964).

In 1965 defendant commenced a *coram nobis* proceeding addressed to the voluntariness of his August 26 statement. Special Term found that the voluntariness of the statement had not been proved beyond a reasonable doubt and ordered a new trial. Defendant was released on bail. We reversed the order (*People* v. *Graham*, 27 A D 2d 203) and the Court of Appeals affirmed the decision on our opinion (27 N Y 2d 616). Bail was then revoked and defendant was remanded to custody.

In February 1971, defendant commenced a Federal habeas corpus proceeding in the Western District of New York. Following denial of his application, he appealed to the Court of Appeals for the Second Circuit which reversed the order and directed issuance of the writ unless defendant was retried within 60 days (*United States ex rel. Graham* v. *Mancusi*, 457 F. 2d 463

[2d Cir., 1972]). The court found that once it was determined that the September 1 statement and the notes were inadmissible, due process required a new trial and that our decision modifying the judgment to convict defendant of manslaughter in the first degree deprived him of his right to a jury trial. Defendant was subsequently retried on a charge of murder in the second degree and convicted thereof. With the exception of the testimony of Lowell Graham, defendant's son, the evidence at the second trial was essentially the same as that at the first.

In assailing his conviction, defendant argued, *inter alia* that his retrial on a charge of murder in the second degree following modification of the judgment to convict him of manslaughter in the first degree constitutes double jeopardy in violation of section 6 of article I of the New York Constitution and of the Fifth Amendment to the United States Constitution; that he was denied his Sixth Amendment rights to a speedy trial and to confrontation of the witnesses; that it was prejudicial error to use his September 1 statement for impeachment purposes; that the District Attorney improperly suppressed evidence by making a witness unavailable to the defense; that he was denied his rights under the Grand Jury Clause of the Fifth Amendment and was improperly denied permission to inspect the Grand Jury minutes; that there was insufficient evidence to support the verdict; and that the proceedings against him violated his constitutional right to due process of law.

We find no merit in the defendant's contention that he was denied either a speedy trial or his right to confront the witnesses. Defendant's argument on the former point is that it has taken the State of New York over 10 years to provide him with a *fair* trial and that during that time he has constantly sought such a trial only to be repeatedly frustrated by erroneous judicial decisions. Such delay, he argues, is per se prejudicial. While this argument is not without superficial plausability, it must be remembered that while the decisions of which defendant complains were in effect, the People were without the power to retry him without violating double jeopardy provisions of the Constitution (*North Carolina* v. *Pearce,* 395 U. S. 711, 717; *Matter of Lange,* 18 Wall. [85 U. S.], 163, 173 [1874]; *People* v. *Jackson,* 20 N Y 2d 440, 446, cert. den. 391 U. S. 928). Both trials which defendant received were provided within constitutional periods *measured from the moment they became necessary.*

Regarding the latter argument, he contends that the use at his second trial of testimony of two witnesses at the first trial,

Detective Connelly and Dr. Kelly, the pathologist, deprived him of his constitutional right to confront the witnesses. Section 670.10 of the Criminal Procedure Law permits use of such testimony when the witness is unable to attend '' by reason of death, illness or incapacity, or cannot with due diligence be found, or is outside the state or in federal custody and cannot with due diligence be brought before the court.'' Detective Connelly had died prior to the second trial and pursuant to the statute, the use of his prior testimony was clearly proper. Dr. Kelly was employed at a hospital in Savannah, Georgia and refused to honor a New York subpoena. The provisions of article 640 of the Criminal Procedure Law were not available to procure his attendance at the trial since Georgia is not a signatory to the '' Uniform Act To Secure Attendance of Witnesses From Without A State In Criminal Proceedings '' (see table, McKinney's Cons. Laws of N. Y., Book 11A, CPL [pt. 3], p. 175). We therefore agree with the trial court's conclusion that Dr. Kelly's presence at the trial could not be secured despite good faith and diligent efforts by the People (*People* v. *Graham,* 69 Misc 2d 567, 569), and that the use of his prior testimony at the second trial was proper. We note particularly that there had been a searching and thorough cross-examination of the pathologist at the first trial by experienced and capable counsel (see *Mancusi* v. *Stubbs,* 408 U. S. 204, 212–214; cf. *Barber* v. *Page,* 390 U. S. 719).

Defendant's contention that it was error to use his September 1 statement for impeachment purposes is likewise without merit. Although we had earlier ruled the statement inadmissible (20 A D 2d 949), that does not end the inquiry. If the statement was voluntarily made, then despite its inadmissibility in the case-in-chief, it would be admissible for impeachment purposes (*Harris* v. *New York,* 401 U. S. 222; *People* v. *Johnson,* 27 N Y 2d 119, cert. den. 401 U. S. 966). During the course of the trial a *Huntley* hearing (*People* v. *Huntley,* 15 N Y 2d 72) was held and the statement was ruled voluntary. That finding is fully supported by the evidence whether measured by the reasonable doubt standard (*People* v. *Huntley, supra*) or the preponderance of the evidence standard (*Lego* v. *Twomey,* 404 U. S. 477).

The argument that there was an improper suppression of evidence finds no factual support in the record. Defendant claims that his attorneys were not permitted sufficient access to his son, Lowell Graham, by the actions of the District Attorney in spiriting the boy away after his appearance in court. However, it appears that although defendant was able to speak to

his son, the latter had no desire to consult with his father's attorneys. In any event, he was available for cross-examination and the District Attorney offered to produce him as a witness if the defense so desired.

Nor do we find persuasive defendant's claim that there was insufficient evidence before the Grand Jury, exclusive of evidence ruled to be illegally obtained, to support an indictment for murder. The receipt of some inadmissible evidence by the Grand Jury does not invalidate the indictment (*People* v. *Leary,* 305 N. Y. 793) nor does it preclude a retrial upon the indictment following a reversal of the conviction due to the receipt at trial of such evidence (*People ex rel. McKay* v. *Skinner,* 26 N Y 2d 632). And pursuant to subdivision 6 of section 210.30 of the Criminal Procedure Law the order denying the motion to dismiss the indictment is not reviewable upon appeal where, as here, the judgment of conviction was based upon legally sufficient trial evidence. We reject the notion that our prior ruling (20 A D 2d 949) is controlling on the issue of the sufficiency of the evidence at the second trial to support the verdict. Aside from the fact that our conclusion to that effect was questioned in the Second Circuit's decision (see *United States ex rel. Graham* v. *Mancusi, supra,* p. 468; see, also, *People* v. *Graham,* 20 A D 2d 949, 950 [HERLIHY, J., dissenting]), we note the presence of items of evidence at this trial that were not present at the former trial.

In deciding defendant's claim of double jeopardy we are confronted with a novel question of whether a defendant, whose conviction for murder in the second degree was modified by an intermediate appellate court so as to convict him of manslaughter in the first degree, and later overturned in a Federal court upon a collateral attack, may be retried for murder in the second degree. Defendant argues that our action in modifying the original judgment of conviction and in imposing sentence thereon, as a result of which he spent many years in prison, bars his reprosecution on the charge for which he was originally convicted because our modification effectively acquitted him of that charge. He further contends that he was placed in an "incredible dilemma" (*Green* v. *United States,* 355 U. S. 184, 193) by having to choose between accepting an illegal judgment and sentence or appealing it and subjecting himself to the possibility of a more serious charge and a harsher sentence.

It is now well settled that the Double Jeopardy Clause of the Fifth Amendment applies to State criminal proceedings (*Benton* v. *Maryland,* 395 U. S. 784; *United States ex rel. Hetenyi* v.

*Wilkins,* 348 F. 2d 844 [2d Cir., 1965], cert. den. 383 U. S. 913 [1966]; *People* v. *Ressler,* 17 N Y 2d 174). In the instant case, that provision of the Constitution was clearly violated by defendant's retrial on the charge of murder in the second degree since the earlier decision of this court (20 A D 2d 949) modifying the judgment so as to convict him of manslaughter in the first degree, and the subsequent denial of leave to appeal to the Court of Appeals, had the same finality as that of a verdict of acquittal of the greater charge (cf. *Forman* v. *United States,* 361 U. S. 416, 426, 430; *Bryan* v. *United States,* 338 U. S. 552, 560; *People* v. *Nappi,* 18 N Y 2d 136, 140; *People* v. *Klose,* 18 N Y 2d 141, 144). We emphatically reject the notion that since our prior action was declared void by the Second Circuit Court of Appeals (*United States ex rel. Graham* v. *Mancusi, supra*) defendant was never placed in jeopardy thereby. As the United States Supreme Court noted in a related context, this argument "sounds a bit strange" since defendant could quietly have served out his sentence under this void judgment — as he partially did in this case — had he not challenged it (*Benton* v. *Maryland, supra,* p. 796). Furthermore, to permit a retrial on a charge of murder in the second degree would, in effect, be to place an unconscionable and unconstitutional premium upon the exercise of defendant's legal right to challenge State criminal proceedings via Federal habeas corpus (*United States ex rel. Hetenyi* v. *Wilkins, supra,* p. 859; *People* v. *Jackson,* 20 N Y 2d 440, 452).

Since the evidence amply supports the conviction, we would ill serve the interests of justice by ordering yet another trial and forcing the defendant and the People to undergo once again the strain and expense inherent in such an endeavor. We therefore modify the judgment on the law and in the exercise of discretion in the interests of justice to convict the defendant of manslaughter in the first degree (CPL 470.15, subds. 2 and 3) and remand the proceeding for resentencing (CPL 470.20, subd. 4). In so doing, we note that none of the fears alluded to by the court in *Hetenyi,* which necessitated a new trial therein (*United States ex rel. Hetenyi* v. *Wilkins, supra,* pp. 865–866), are present in the instant case.

The judgment should be modified, on the law, in the exercise of discretion, and in the interests of justice, to convict defendant of manslaughter in the first degree and, as so modified, affirmed, and, matter remanded for resentencing pursuant to subdivision 4 of section 470.20 of the Criminal Procedure Law.

HERLIHY, P. J., SWEENEY, KANE and MAIN, JJ., concur.

Judgment modified, on the law, in the exercise of discretion, and in the interests of justice, to convict defendant of manslaughter in the first degree and, as so modified, affirmed, and matter remanded for resentencing pursuant to subdivision 4 of section 470.20 of the Criminal Procedure Law.