**Burton C. GRAHAM, Petitioner-Appellee,**

v.

**Harold J. SMITH, Superintendent Attica Correctional Facility, Respondent-Appellant.**

**No. 1108, Docket 79-2022.**

United States Court of Appeals, Second Circuit.

Argued May 30, 1979.

Decided July 18, 1979.

Philip Halpern, Buffalo, N. Y. (State University of New York Faculty of Law and Jurisprudence, Rolf Nils Olsen, Jr., Buffalo, N. Y., of counsel), for petitioner-appellee.

D. Bruce Crew, III, Chemung County Dist. Atty., Elmira, N. Y., James L. Kennedy, Asst. Atty. Gen., Buffalo, N. Y., of counsel), for respondent-appellant.

Before MOORE, FRIENDLY and FEINBERG, Circuit Judges.

FRIENDLY, Circuit Judge:

This case, arising from the death of Lucille Graham in Elmira, N. Y. on August 26, 1961, has had a long history. This is recorded in many opinions of the New York courts[1] and in one of our own, *U. S. ex rel. Graham v. Mancusi*, 457 F.2d 463 (2 Cir. 1972), familiarity with which is assumed.

Burton Graham was indicted in 1961 for first degree murder of his wife Lucille and was convicted of second degree murder. Important evidence against him was a highly inculpatory post-arraignment statement taken on September 1, 1961, which was immensely more damaging than a statement made shortly after discovery of the homicide. The September 1 statement revealed that he had typed out two notes in his wife's name in which she admitted sexual misconduct, child abuse and an intention to go away, and that he had left them where they would be found by the police. See 457 F.2d at 465–66. The Appellate Division for the Third Department, *People v. Graham*, 20 A.D.2d 949, 249 N.Y.S.2d 97 (1964), ruled that under *People v. Meyer*, 11 N.Y.2d 162, 227 N.Y.S.2d 427 (1962), this statement was improperly received because taken from Graham after arraignment without the presence of an attorney, and that the two notes were also improperly received because their identification and reception in evidence had been based solely on the illegally obtained statement. The Appellate Division held that admission of this evidence had given rise to substantial prejudice, and that in the absence of the erroneously admitted material the evidence was insufficient to warrant conviction of second degree murder, to wit, the killing of a human being "when committed with a design to effect the death of the person killed, or of another, but without deliberation and premeditation," former N.Y. Penal Law § 1046, current version at N.Y. Penal Law § 125.25. However, the court concluded that the properly admitted evidence sufficed to support a conviction of first degree manslaughter, a killing "[i]n the heat of passion, but in a cruel and unusual manner", former N.Y. Penal Law § 1050, current version at N.Y. Penal Law § 125.20. Availing itself of the power confided to it by § 543 of the former N.Y. Code of Criminal Procedure, the court modified the portion of the judgment convicting Graham of second degree murder so as to convict him of first degree manslaughter, and sentenced him to a term of not less than 10 nor more than 20 years, the maximum permitted by law. Graham's motion for leave to appeal to the New York Court of Appeals was denied.

After various state proceedings unnecessary to detail, see 457 F.2d at 467, Graham sought federal habeas corpus in the District Court for the Western District of New York. Reversing a denial of his petition by that court, we held that the Appellate Division had deprived Graham of due process since he was entitled to have any claim of first degree manslaughter presented to a trier of the facts which would not have been exposed to tainted evidence.[2]

1. *People v. Graham*, 20 A.D.2d 949, 249 N.Y. S.2d 97 (1964); *People v. Graham*, 27 A.D.2d 203, 277 N.Y.S.2d 943 (1967), aff'd mem. 27 N.Y.2d 616, 313 N.Y.S.2d 753, 261 N.E.2d 661 (1970); *People v. Graham*, 69 Misc.2d 670, 330 N.Y.S.2d 711 (Sup.Ct.1972), modified, 43 A.D.2d 182, 350 N.Y.S.2d 458 (1973), aff'd 36 N.Y.2d 633, 370 N.Y.S.2d 888, 331 N.E.2d 673 (1975).

2. We said, 457 F.2d at 468–69:

We directed issuance of the writ, 457 F.2d at 471:

> unless Graham is retried within sixty days from the issuance of our mandate or such further reasonable time as the district court, for good cause shown, may allow.

While our opinion did not specify for what crime Graham was to be retried, an issue not discussed in the briefs, we[3] scarcely supposed that, quite apart from considerations of double jeopardy, the county prosecutor would seek to retry Graham on a charge for which the Appellate Division had held there was no adequate admissible evidence—unless, as was not suggested to us, new evidence had been developed, as was then permitted by New York law.[4] However, the prosecutor elected to do just that, and the local judge sustained this course of action, *People v. Graham*, 69 Misc.2d 670, 330 N.Y.S.2d 711 (Sup.Ct., Chemung Co., 1972).

Faced with the second degree murder charge, Graham testified in his own de-

---

We think the Appellate Division, by what doubtless was inadvertent error, wrongly assimilated a case where evidence supporting a conviction of a more serious offense had been unlawfully received to one where the evidence was merely insufficient for that purpose. In the latter event, the trier of the facts has already found every element of a lesser included offense on evidence which was properly before it. In such a case there is no unfairness in the appellate court's modifying the judgment to apply only to the lesser offense, of which the jury could properly have convicted and surely would have, although it may well be that, even in such a case, the defendant is constitutionally entitled to a new sentencing on the lesser crime at which he will have the assistance of counsel. See *Mempa v. Rhay*, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967), held fully retroactive in *McConnell v. Rhay*, 393 U.S. 2, 89 S.Ct. 32, 21 L.Ed.2d 2 (1968). In contrast, here it is sheer speculation what the jury would have done if the September 1 confession and the admittedly fabricated notes had not been before it. To be sure, the August 26 statement and the medical and other evidence would have been sufficient to sustain a conviction for first degree manslaughter, or even perhaps for second degree murder as the judge dissenting in the Appellate Division thought, whether or not Graham had taken the stand. But without the material held to have been erroneously received, there would have been a sharp issue of credibility whether Graham had merely done what he deemed necessary to quiet Lucille and had left believing that she was alive and the cold water would shortly revive her, or whether he had caused her death "in the heat of passion, but in a cruel and unusual manner." Former N.Y. Penal Law § 1050(2), McKinney's Consol.Laws c. 40. It is not a sufficient answer that the justices of the Appellate Division may well have been justified in thinking that the latter conclusion would have been the more reasonable or even that the former would have been unreasonable. A jury hearing solely the evidence held to have been legally admissible might well have found Graham guilty of only second degree manslaughter, former New York Penal Law § 1052, if

indeed it did not exercise its "power to bring in a verdict [of acquittal] in the teeth of both law and facts." See *Horning v. District of Columbia*, 254 U.S. 135, 138, 41 S.Ct. 53, 54, 65 L.Ed. 185 (1920). The trial judge surely would not and, of course, could not have directed a verdict of guilty of first degree manslaughter or of any other crime. See, *e.g., People v. Walker*, 198 N.Y. 329, 334, 91 N.E. 806 (1910); *People v. Upton*, 38 Hun. 107 (1885). Yet what the Appellate Division did here is the equivalent in practical effect—indeed worse from the defendant's standpoint in several ways. The judges had not heard or seen the witnesses; they had read the inadmissible material; and Graham was afforded no opportunity to be heard, with the assistance of counsel, on the sentence for the crime of which he was convicted. (Footnotes omitted).

3. The writer, who authored the previous opinion, and Judge Moore were on the panel.

4. New York law then applicable permitted a new trial where a conviction at a former trial had been set aside for insufficient evidence. See, *e.g., People v. Bearden*, 290 N.Y. 478, 49 N.E.2d 785 (1973); *People v. Guardino*, 286 N.Y. 132, 36 N.E.2d 82 (1941); *People v. Romano*, 279 N.Y. 392, 18 N.E.2d 634 (1939); *People v. Lee*, 308 N.Y. 302, 125 N.E.2d 580 (1955) (dictum). Presumably this was to allow the prosecution to cure previous defects and not simply to have another chance with the same evidence. Cf. 2 Wright, Federal Practice and Procedure § 470, at 270 & n. 31. This practice is no longer permitted as a matter of state law, see N.Y.Crim.Proc. Law § 470.20(2) (McKinney's Consol.Laws 1971), and appellate courts must dismiss the indictment when reversing for insufficient evidence. This result is now mandated by recent Supreme Court decisions holding it a violation of the double jeopardy clause to retry a defendant who has won reversal of a previous trial on grounds of insufficient evidence as opposed to trial error. *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).

fense, again along the lines of his August 26, 1961 statement, see 457 F.2d at 465. If the jury credited this, the evidence would not have permitted it to find that Graham had "a design to effect the death" of his wife, and perhaps it might not even have found that he intended to kill her "in a cruel and unusual manner." The prosecutor having indicated that he proposed to use the September 1 confession in cross-examination, the judge conducted a hearing under *People v. Huntley*, 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1963), on whether it was voluntary and concluded that it was and therefore was admissible for impeachment.[5] In cross-examining the prosecutor called attention to such statements in the confession as that "My troubles and worries had built up to such an extent that I decided Lucille had to die" and that she had gone limp and Graham "went out of the room knowing she was drowning or going to drown." With this testimony before it, even although only as impeachment, the jury convicted of second degree murder.

On appeal, 43 A.D.2d 182, 350 N.Y.S.2d 458 (1973), the Appellate Division rejected most of Graham's arguments. Turning to his double jeopardy contentions, the court agreed that this "provision of the Constitution was clearly violated by defendant's retrial on the charge of murder in the second degree since the earlier decision of this court (20 A.D.2d 949, 249 N.Y.S.2d 97), modifying the judgment so as to convict him of manslaughter in the first degree, and the subsequent denial of leave to appeal to the Court of Appeals, had the same finality as that of a verdict of acquittal of the greater charge." 43 A.D.2d at 188, 350 N.Y.S.2d at 464–65. However, the court again exercised its power, now under New York CPL § 470.15, to convict Graham of manslaughter in the first degree and remanded for resentence. Both sides having appealed,

the Court of Appeals affirmed. *People v. Graham*, 36 N.Y.2d 633, 370 N.Y.S.2d 888, 331 N.E.2d 673 (1975).

■ Graham returned to the District Court for the Western District of New York with petition for *habeas corpus* filed on November 10, 1975, claiming that his constitutional rights had been impaired by his retrial for second degree murder, even though his conviction had been reduced to first degree manslaughter which he conceded the legally admitted evidence was sufficient to support. He was conditionally released from prison on May 4, 1976, and his full sentence expired on January 13, 1978, a year before the district court upheld his petition. However, this did not moot the case. *Carafas v. LaVallee*, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968). Chief Judge Curtin, in a well-reasoned opinion, directed that the writ of *habeas corpus* be granted and that the parties should notify the court within 30 days whether any further proceedings in the state court were contemplated.

■ The State makes a number of attempts to show that the Appellate Division and the Court of Appeals were in error in holding that the action of the Appellate Division on the first appeal, followed by denial of leave to appeal to the Court of Appeals, operated as an acquittal of second degree murder. It claims that our judgment "wiped out" the Appellate Division's. It did nothing of the sort. What we "wiped out" was the conviction for first degree manslaughter, which was all that was before us. The State also argues that the Appellate Division's holding that its first ruling was an acquittal was based on a misperception of federal law rather than an application of state law. Even if the point were relevant, we see no basis for the State's contention; in any event the Court

---

**5.** The Appellate Division assumed, 43 A.D.2d at 186, 350 N.Y.S.2d at 463, that *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), holding statements inadmissible under *Miranda* were admissible for impeachment purposes, see also *Oregon v. Hass*, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975), applied to

statements inadmissible under *People v. Meyer*, 11 N.Y.2d 162, 227 N.Y.S.2d 427, 182 N.E.2d 103 (1962), see also *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). This issue was neither addressed by Judge Curtin below nor argued before us.

of Appeals has expressly ruled that the portion of the order relating to the charge of murder in the second degree "was equivalent to an acquittal." 36 N.Y.2d at 639, 370 N.Y.S.2d at 895, 331 N.E.2d at 677.[6]

The interesting question is whether the prosecutor's unconstitutional action in trying Graham a second time for second degree murder, for which no valid conviction could have been obtained, also invalidates the conviction for first degree manslaughter to which the Appellate Division reduced it, with the subsequent approval of the Court of Appeals. It would seem that if the State had tried Graham before the jury for both the barred second degree murder charge and the open first degree manslaughter charge and the jury had convicted of the latter, the conviction could not stand. U. S. ex rel. Hetenyi v. Wilkins, 348 F.2d 844 (2 Cir. 1965) (Marshall, J.), cert. denied, 383 U.S. 913, 86 S.Ct. 896, 15 L.Ed.2d 667 (1966);[7] Price v. Georgia, 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970). It is equally plain that if after our habeas corpus decision, 457 F.2d 463, the State had prosecuted Graham only for first degree manslaughter and the jury had convicted, the double jeopardy clause would provide Graham no relief. The question is how the matter stands when, on the basis of sufficient untainted evidence, the jury has convicted of the greater offense and a reviewing court has reduced the conviction to what would have been permissible in a prosecution solely for the lesser offense.

While there is language in Hetenyi and Price that might suggest that the State must be deprived of any conviction on a trial that had included a charge barred by double jeopardy, we do not believe the courts intended to go so far. See Pacelli v. United States, 588 F.2d 360, 366 (2 Cir.), cert. denied, 434 U.S. 1010, 98 S.Ct. 721, 54 L.Ed.2d 753 (1978).[8] A sufficient basis for the Hetenyi and Price decisions was that the presence of the barred more serious charge created a serious risk that the jury in Hetenyi might have been led to compromise on a more rather than a less serious unbarred charge, e. g. second degree murder rather than first degree manslaughter, see 348 F.2d at 865–66,[9] or in Price, to have convicted on a lesser included offense, voluntary manslaughter, rather than to have acquitted or hung, see 398 U.S. at 331, 90 S.Ct. 1757. On that view Graham's case is distinguishable; the jury convicted on the more serious charge and there is thus no indication that the verdict was a compromise resulting from inclusion of the barred charge. Even more clearly we could not assume that, in taking the action that they did, the Appellate Division and the Court of Appeals were influenced by the presence of a charge they had held to be barred by the double jeopardy clause.

While the fear of a compromise verdict was the principal basis for Hetenyi, the opinion did not stop with this. It said that when a barred charge is included, "[t]he question is not whether the accused was actually prejudiced, but whether there is

6. See note 4, supra.

7. The rather complicated sequence of charges, convictions and appellate court actions in Hetenyi was as follows:

| Trial | Charge | Conviction | Appellate Action |
|---|---|---|---|
| 1 | 1st degree murder | 2d degree murder | reversed for trial error |
| 2 | 1st degree murder | 1st degree murder | reversed for trial error |
| 3 | 1st degree murder | 2d degree murder | affirmed |

The double jeopardy was held to lie in the trials for first degree murder on trials 2 and, more pertinently, 3, although the verdict in trial 1 operated as an acquittal of that charge under

the principle of Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957), see 348 F.2d at 856.

8. See also United States v. Alexander, 152 U.S. App.D.C. 371, 377, 471 F.2d 923, 939 (as amended, 1973), cert. denied, 409 U.S. 1044, 93 S.Ct. 541, 34 L.Ed.2d 494 (1972) (opinion of Bazelon, J.); id. 152 U.S.App.D.C. at 414, 471 F.2d at 966 (opinion of McGowan, J.).

9. In Evans v. United States, 130 U.S.App.D.C. 114, 116–17, 397 F.2d 675, 677–78 (1968), cert. denied, 394 U.S. 907, 89 S.Ct. 1016, 22 L.Ed.2d 218 (1969), then Judge Burger, the later author of Price, interpreted Hetenyi as turning on this possibility.

*reasonable possibility* that he was prejudiced," 348 F.2d at 864 (emphasis in original). It further indicated that an exceedingly small showing on this score would suffice. *Id.*

On that basis we think Graham meets the test, although barely so. The claim is that but for the inclusion of the second degree murder charge he might have chosen not to testify, thereby avoiding introduction of the extremely damaging admissions in his September 1 statement. The difficulty lies in accepting the premise. The August 26 statement and other evidence would have been ample to convict Graham of first degree manslaughter. Still it is not completely fanciful to suppose that, apart from the threat of a longer sentence for second degree murder when he may well have been approaching the end of his imprisonment for manslaughter, and the greater stigma of a murder conviction, see *Price v. Georgia, supra,* 398 U.S. at 331 n. 10, 90 S.Ct. 1757, Graham might have chosen to take the chance that, if he had stood silent, the jury might have found him guilty only of assault or even have decided that, whatever the law, ten years' imprisonment for this homicide were enough. *See Horning v. District of Columbia,* 254 U.S. 135, 138, 41 S.Ct. 53, 65 L.Ed. 185 (1920). On the particular facts of this case we think this was a sufficient showing of prejudice to satisfy the rather low requirement of *Hetenyi* and then to invalidate the manslaughter conviction.

The order of the district court is therefore affirmed.