James Michael MATHEWS,
Petitioner-Appellant,

v.

Ronald C. MARSHALL,
Respondent-Appellee.

No. 83–3587.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 7, 1984.

Decided Feb. 1, 1985.

Bailey Brown, Senior Circuit Judge, dissented and filed an opinion.

Edward Marek, Federal Public Defender, Michael G. Dane (argued), Cleveland, Ohio, for petitioner-appellant.

Richard David Drake, Asst. Atty. Gen., Columbus, Ohio, for respondent-appellee.

Before MARTIN and JONES, Circuit Judges, and BROWN, Senior Circuit Judge.

BOYCE F. MARTIN, Jr., Circuit Judge.

James Michael Mathews appeals the district court's dismissal of his habeas corpus

petition. Mathews claims that his sentence for murder violates the double jeopardy clause of the fifth amendment. For the reasons discussed below, we reverse the district court's decision and grant the petition for habeas corpus.

On February 17, 1978, Mathews and Steven Daugherty robbed a bank in Alexandria, Ohio. The police pursued Mathews and Daugherty following the robbery and surrounded them in a farm house. After a short time, Mathews surrendered, and the police entered the farm house. They found Daugherty dead, shot once in the head and once in the chest. At the time, the coroner ruled that the death was suicide.

Mathews subsequently was indicted under the Ohio Rev.Code Ann. § 2911.01 on armed robbery charges.[1] He pled guilty to these charges and was sentenced on May 17, 1978. On June 1, 1978, Mathews was indicted under Ohio Rev.Code Ann. § 2903.-01 for the aggravated murder of Steven Daugherty, and on September 1, 1978, a jury found him guilty of that crime.[2] Mathews was sentenced to life imprisonment.

Mathews appealed his aggravated murder conviction, claiming that his trial for aggravated murder following his conviction for aggravated robbery violated the double jeopardy clause. The Ohio Court of Appeals affirmed his conviction, and the Ohio Supreme Court denied Mathews' motion for leave to appeal. The United States Supreme Court, however, granted certiorari, vacated the conviction, and remanded the case for further consideration in light of

*Illinois v. Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980). *Mathews v. Ohio*, 448 U.S. 904, 100 S.Ct. 3044, 65 L.Ed.2d 1134 (1980).

In *Illinois v. Vitale*, the Supreme Court reaffirmed the test articulated in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), for determining whether a defendant is being prosecuted for the same offense for double jeopardy purposes. *Vitale*, 447 U.S. at 416, 100 S.Ct. at 2265. "[T]he test to be applied to determine whether there are two offenses or only one, is whether *each* [statutory] provision requires proof of a fact which the other does not." *Id.* (quoting *Brown v. Ohio*, 432 U.S. 161, 166, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977)) (emphasis added). In applying this test, the Court stated that the courts should focus "on the proof necessary to prove the statutory elements of each offense, rather than on the actual evidence to be presented at trial." Yet when a statute has alternative statutory elements, as does the aggravated murder statute in this case, the *Vitale* Court recognized that the courts, before applying the *Blockburger* test, should examine the particular case to determine which statutory elements the state is actually trying to prove. *Id.* 447 U.S. at 418–19, 100 S.Ct. at 2266–67. *See also Whalen v. United States*, 445 U.S. 684, 694, 100 S.Ct. 1432, 1439, 63 L.Ed.2d 715 (1977); *Pandelli v. United States*, 635 F.2d 533, 536 (6th Cir. 1980); *Pryor v. Rose*, 724 F.2d 525, 529 (6th Cir.1984). Thus, where an element of

---

**1.** Ohio Rev.Code Ann. § 2911.01 (Baldwin 1982) states:

> (A) No person, in attempting or committing a theft offense as defined in section 2913.01 of the Revised Code, or in fleeing immediately after such attempt or offense, shall do either of the following:
> (1) have a deadly weapon or dangerous ordnance as defined in section 2923.11 of the Revised Code on or about his person or under his control;
> (2) Inflict, or attempt to inflict serious physical harm on another.
> (B) Whoever violates this section is guilty of aggravated robbery, a felony of the first degree.

**2.** Ohio Rev.Code Ann. § 2903.01 (Baldwin 1982) states:

> (A) No person shall purposely, and with prior calculation and design, cause the death of another.
> (B) No person shall purposely cause the death of another while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit kidnapping, rape, aggravated arson or arson, aggravated robbery or robbery, aggravated burglary or burglary, or escape.
> (C) Whoever violates this section is guilty of aggravated murder, and shall be punished as provided in section 2929.02 of the Revised Code.

aggravated murder is a felony such as rape or armed robbery, the court must determine which felony the state is trying to prove to determine whether there is double jeopardy.

On remand, the Ohio Court of Appeals recognized that under *Vitale*, aggravated robbery was the same offense as aggravated murder and that Mathews' protection from double jeopardy had been violated by his second trial. Instead of vacating Mathews' aggravated murder conviction, however, the Court of Appeals modified his aggravated murder conviction to a murder conviction, which did not require a showing that the murder was in connection with a felony. Mathews' life sentence was accordingly reduced from a life sentence to fifteen years to life.

In denying Mathews' petition for habeas corpus, the district court approved of the state court's application of *Vitale*. The district court recognized that it must look to the actual elements of the offense that the state is trying to prove in applying the double jeopardy clause. Because the state convicted Mathews of aggravated murder based on an aggravated robbery for which he had already been convicted, the district court concluded that the offenses were the same for double jeopardy purposes and that Mathews had been unconstitutionally convicted of aggravated murder. The district court, however, found that the reduction of Mathews' sentence from aggravated murder to murder cured the constitutional violation.

In this appeal, the state concedes that Mathews' trial for aggravated murder violated the double jeopardy clause. The state argues, however, that the reduction of Mathews' sentence to murder removed any constitutional error. The state reasons that aggravated murder includes three elements: (1) the felony; (2) the act; and (3) the intent to kill. On the other hand, murder requires proof of only two elements: (1) the act and (2) the intent to kill. The state contends that by finding Mathews guilty of the elements of aggravated murder, the jury necessarily found Mathews guilty of the included elements of murder. The state concludes that the reduction of Mathews' sentence to murder removed the felony element and thus the double jeopardy taint, and that a new trial for murder would be a waste of judicial resources.[3]

Mathews concedes that he could have been tried for murder without violating the double jeopardy clause and that he could still be tried for murder if we reversed his current sentence.[4] Mathews, however, maintains that his whole trial for aggravated murder contravened the double jeopardy clause and that a constitutionally valid conviction cannot be a product of a constitutionally defective trial. Mathews would thus have us adopt a broad rule that the only remedy for a trial in contravention of the double jeopardy clause is a new trial.[5]

Although Mathews' argument is somewhat appealing, there is precedent directly to the contrary. In *Tapp v. Lucas*, 658 F.2d 383 (5th Cir.1981), Tapp had been convicted of murder after his first conviction for manslaughter was reversed for evidentiary error. On appeal, the Mississippi Supreme Court recognized that his second trial for murder violated the double jeopardy clause because the jury had implicitly found him innocent of murder by convicting him of the lesser-included offense of manslaughter in the first trial. Instead of

---

**3.** Both parties agree that Mathews' trial for aggravated murder would not foreclose a new trial for murder. The Supreme Court has consistently recognized that the reversal of a conviction on procedural grounds does not preclude the government from retrying a defendant. *See United States v. Tateo*, 377 U.S. 463, 465, 84 S.Ct. 1587, 1588, 12 L.Ed.2d 448 (1964).

**4.** *See supra* n. 3.

**5.** We find Mathews' argument that *Menna v. New York*, 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975), is directly controlling on this point not to be convincing. In *Menna*, the Supreme Court, in a very short opinion, stated that "federal law require[s] that a conviction on [a] charge [in violation of the double jeopardy clause] be set aside." *Id.* at 62, 96 S.Ct. at 242. This language was not, however, directed to the specific question presented in this case and was more a general admonition than a precise holding.

granting the petitioner a new trial, however, the Mississippi Supreme Court ordered the trial court to reduce Tapp's murder sentence to manslaughter.

The Fifth Circuit upheld the state court's modification of Tapp's sentence. The court reasoned that because Tapp was found guilty of murder, "the jury considered Tapp guilty of the lesser included offense of manslaughter as well." *Id.* at 386. The court then noted that Tapp was not prejudiced at trial by his prosecution for the greater offense and concluded the sentence modification was "a common sense solution to the problem of avoiding yet another trial for prosecution and defense." *Id.*

A similar case is *Graham v. Smith*, 602 F.2d 1078 (2d Cir.1979). In that case, Graham was convicted of second-degree murder after his first conviction for manslaughter was overturned. A state appellate court modified Graham's sentence to manslaughter when Graham claimed that his murder conviction violated the double jeopardy clause.

In reviewing the case on a habeas petition, the Second Circuit refused to adopt a rule that would have "deprived [the state] of any conviction on a trial that had included a charge barred by double jeopardy." The court instead decided that a trial tainted by an impermissible charge could still produce a valid conviction unless the defendant can show a *"reasonable possibility* that he was prejudiced." *Id.* at 1083 (quoting *United States ex rel. Hentenyi v. Wilkins*, 348 F.2d 844 (2d Cir.1965), *cert. denied*, 383 U.S. 913, 86 S.Ct. 896, 15 L.Ed.2d 667 (1966)) (emphasis in original). Applying this standard, the Court concluded that Graham may have been prejudiced because he felt forced to testify to defend the greater offense while he may not have testified if charged only with manslaughter.

These cases are very similar to the present case. In all of these cases, the defendants were convicted of greater offenses in trials that violated the double jeopardy clause. In each case, their convictions were modified to convictions that would have been permissible. Although

Mathews attempts to distinguish *Tapp* and *Graham* on the ground that they involved a prosecution following an acquittal and his case involves a prosecution following a conviction for the same crime, we find that this is a distinction without a difference. Thus, if the reasoning in *Graham* and *Tapp* is sound, they should be applicable to the case.

Unfortunately, the reasoning in neither of those cases is well developed. In *Tapp*, the Fifth Circuit apparently relied on the practical convenience of avoiding a new trial. The Second Circuit in *Graham* simply expanded on related precedent. We believe, however, that we must examine the purposes behind the double jeopardy clause in deciding whether sentence modification is an acceptable remedy.

 The basic policy underlying the double jeopardy clause is that the state "should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarassment, expense and ordeal and compelling him to live in a continuing state of anxiety, and insecurity...." *Green v. United States*, 355 U.S. 184, 187–88, 78 S.Ct. 221, 223–24, 2 L.Ed.2d 199 (1957). The double jeopardy clause therefore promotes finality, whether the defendant was initially convicted or acquitted. *Brown v. Ohio*, 432 U.S. 161, 165–66, 97 S.Ct. 2221, 2225–26, 53 L.Ed.2d 187 (1977).

In light of this policy, a per se rule that a defendant is always entitled to a new trial for a double jeopardy violation would not be logical. When a new trial is granted, the defendant undergoes the anxiety and expense that the double jeopardy clause is attempting to avoid. Just because the defendant himself is willing to face a new trial does not mean that we should grant such a trial if it would be a futile exercise.

 At the same time, however, we cannot allow the state to profit from violations of the double jeopardy clause. For example, the state cannot prosecute a charge in violation of the double jeopardy clause in the hope that the jury will convict the defendant of a lesser included offense. *See Tapp*, 658 F.2d at 385–86; *Graham*,

602 F.2d at 1082. *See also Price v. Georgia*, 398 U.S. 323, 331, 90 S.Ct. 1757, 1762, 26 L.Ed.2d 300 (1970). We therefore agree with the Second Circuit that a conviction obtained in violation of the double jeopardy clause cannot be modified if the defendant can show that there was a "reasonable possibility that he was prejudiced" by the double jeopardy violation. *Graham*, 602 F.2d at 1083. "[A]n exceedingly small showing ... would suffice" to demonstrate such a possibility of prejudice. *Id.*

 In this case, Mathews claims that he was prejudiced because evidence was admitted in his trial for aggravated murder that would not have been admissible in a trial for murder.[6] Mathews points to statements made by him about the robbery that put his credibility in issue before he even had decided whether to testify, testimony about a stolen vehicle used in the robbery, and weapons and a ski mask used only in the robbery. We agree that the admission of such evidence may have prejudiced the jury with regard to its findings as to intent and to the act itself, and we therefore find that Mathews is entitled to a new trial on the murder charge.

The district court's decision is reversed, and the case is remanded to that court with directions to issue the writ unless Mathews is retried within sixty days from the issuance of our mandate or such further time as the district court, for good cause shown, may allow.

BAILEY BROWN, Senior Circuit Judge.

I respectfully dissent and would affirm District Judge Spiegel's denial of habeas relief.

The majority opinion is bottomed on the proposition, following *Graham v. Smith*, 602 F.2d 1078 (2d Cir.1979), that there is a "*reasonable possibility* that [Mathews] was prejudiced*,*" *id.* at 1083 (quoting *United States ex rel. Hentenyi v. Wilkins*, 348 F.2d 844, 864 (2d Cir.1965) (Marshall, J.), *cert. denied*, 383 U.S. 913, 86 S.Ct. 896, 15 L.Ed.2d 667 (1966)) (emphasis in original), by his trial for aggravated murder rather than murder. The reason there is a possibility that Mathews was so prejudiced, the majority opinion holds, is that "evidence was admitted in his trial for aggravated murder that would not have been admissible in a trial for murder." (At 162).

It will be remembered that Mathews and one Daugherty had robbed a bank and, while pursued by police, were surrounded in a farm house. Shortly, two shots were fired and Daugherty was found dead, shot in the head and chest.

It is far from clear to me that, under the ordinary rules of evidence, the State would not, in a murder trial, have been allowed to prove the surrounding circumstances, including the facts surrounding the just-completed bank robbery. More importantly, admission of such proof would not rise to a federal constitutional violation, and we are here dealing with the question whether, by reducing Mathews' conviction to murder, he has been deprived of a federal constitutional right. I do not think so and therefore dissent.

---

**6.** The state's argument that Mathews failed to exhaust his remedies as to this claim is unconvincing. Mathews has consistently claimed that his protection against double jeopardy has been abridged. The reasoning why his double jeopardy rights were violated need not be fully developed at each stage of the appellate process.